FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 2 8 2006

LUTHER D. THOMAS, Clerk

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EURODIS ELECTRON PLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.<br>1:04-CV-2669-JEC |
| UNICOMP, INC., | |
| Defendant. | |

### ORDER & OPINION

This case is presently before the Court on plaintiff's Motion for Summary Judgment [13]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Summary Judgment [13] should be **GRANTED**.

### BACKGROUND

On January 13, 2004, plaintiff Eurodis Electron PLC ("Eurodis") obtained a judgment against defendant Unicomp, Inc. ("Unicomp") in the High Court of Justice, Chancery Division located in the United Kingdom. (Statement of Material Facts as to Which There is no Genuine Issue to be Tried ("SMF") [13] at ¶ 1.) The High Court of Justice entered judgement in the amount of £365,303.84 in damages and £46,767.63 in pre-judgment interest. The court also awarded

£18,000.00 in costs, for a total judgment on January 13th of £430,071.47. (*Id.*) Defendant's appeal of this judgment was dismissed in favor of plaintiff on May 7, 2004. The appellate court increased the costs awarded from £18,000.00 to £21,000.00 and awarded additional costs respecting the appeal of £6,734.50. (*Id.* at ¶ 2.)

On September 13, 2004, plaintiff filed this diversity action as a foreign judgment creditor pursuant to the Georgia Foreign Money Judgment Act, O.C.G.A. § 9-12-113, to recover the judgment awarded in the United Kingdom. (Compl. ("Compl.") [1] at ¶ 1.) On February 25, 2005, plaintiff moved for summary judgment in its favor. (Mot. for Summ. J. ("Summ. J.") [13] at 13.) In response, defendant indicated that it had filed a request for a second appeal in the United Kingdom. (Def. Unicomp, Inc.'s Mot. for Stay, etc. ("Resp. to Summ. J.") [17] at ¶ 3.) Defendant requested a stay until its request for a second appeal was answered and, at the same time, challenged the admissibility of the affidavit of English solicitor Robert Vincent Hadley attached to plaintiff's motion for summary judgment. (*Id.* at 2, 5.)

On April 28, 2005, the Court issued an Order denying defendant's motion for stay. The Court went on to note that:

> [w]ith regard to defendant's response to the plaintiff's Motion for Summary Judgment, defendant argues only that the Court should disregard the Hadley Affidavit. Yet, the Hadley Affidavit appears to be merely an explication of British law, which explanation furthers plaintiff's

2

> argument that the British judgment in question is the type of judgment that would be honored under Georgia law. If so, plaintiff would prevail in this litigation. Whether the Hadley Affidavit is sworn or not, the Court will assume that, unless rebutted, it, and the plaintiff's memorandum, correctly set out adequate reasons why the British judgment is the type of judgment that should be recognized by the United States Courts.

(Order [21] at 1-2)(internal citation omitted).

Later, on May 11, 2005, defendant filed a motion for reconsideration of the Court's Order denying defendant's motion for stay. In its motion for reconsideration, defendant supplied the Court with new information indicating that the United Kingdom's Court of Appeal, Civil Division had recently recognized that there may be merit to one of defendant's grounds for appeal. (Def. Unicomp, Inc.'s Mot. for Recons., etc. ("Mot. Recons.") [22] at 2.) Accordingly, on May 25, 2005, the Court granted defendant's motion for reconsideration and defendant's motion to stay. (Order [24] at 1-2.) The Court then administratively terminated the case, at the same time indicating that plaintiff could reactivate the case after the United Kingdom's Court of Appeal issued its final decision. (*Id.*)

On November 1, 2005, defendant's request for a second appeal was dismissed by the United Kingdom's Court of Appeal. The appellate court awarded additional costs to plaintiff respecting the second appeal in the amount of £3,583.00. (Mot. to Reinstate Case ("Reinstate") [26] at 2.) On February 8, 2006, the Court granted

3

plaintiff's motion to reopen the case. (Order [27] at 1.) Having been reopened, this case is now before the Court on plaintiff's original motion for summary judgment in response to which defendant has filed no additional arguments, legal citations, or other material in support of its position that plaintiff should not be granted summary judgment because of alleged deficiencies in the affidavit of Solicitor Hadley.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an

4

essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[1] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[1] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

5

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Plaintiff's Motion for Summary Judgment

As the Court previously stated in its Order of April 28, 2005, "[w]hether the Hadley Affidavit is sworn or not, the Court will assume that, unless rebutted, it, and the plaintiff's memorandum, correctly set out adequate reasons why the British judgment is the type of judgment that should be recognized by United States Courts." (Order [21] at 2.) The Hadley affidavit has not been rebutted. For this reason, and the reasons articulated below, the Court **GRANTS**

6

plaintiff's Motion for Summary Judgment [13].

In Georgia, "[e]xcept as provided in Code Sections 9-12-114[2] and 9-12-115[3], a foreign judgment meeting the requirements of Code Section

---

[2] O.C.G.A. § 9-12-114 (2006) provides that a foreign judgment shall not be recognized if:

(1) The judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(2) The foreign court did not have personal jurisdiction over the defendant;
(3) The foreign court did not have jurisdiction over the subject matter;
(4) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;
(5) The judgment was obtained by fraud;
(6) The cause of action on which the judgment is based is repugnant to the public policy of this state;
(7) The judgment conflicts with another final and conclusive judgment;
(8) The proceedings in the foreign court were contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;
(9) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or
(10) The party seeking to enforce the judgment fails to demonstrate that judgments of courts of the United States and of states thereof of the same type and based on substantially similar jurisdictional grounds are recognized and enforced in the courts of the foreign state.

[3] O.C.G.A. § 9-12-115 (2006) provides that:

(a) A foreign judgment shall not be refused recognition for lack of personal jurisdiction if:

(1) The defendant was served personally in the foreign state;

9-12-112 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." O.C.G.A. § 9-12-113 (2006).

First, the judgment at issue in this case meets the requirements of Code Section 9-12-112 because it is a "foreign judgment that is

---

(2) The defendant voluntarily appeared in the proceedings other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him;
(3) Prior to the commencement of the proceedings, the defendant had agreed expressly in writing to submit to the jurisdiction of the foreign court, with respect to the subject matter involved in such proceedings, in an action by the party seeking to enforce the judgment;
(4) The defendant was domiciled in the foreign state when the proceedings were instituted or, being a body corporate, then had its principal place of business or was incorporated in the foreign state;
(5) The defendant had a business office in the foreign state and the proceedings in the foreign court involved a cause of action arising out of business done by the defendant through that office in the foreign state; provided, however, that a business office in the foreign state which it maintained for the transaction of business by a subsidiary corporation of the defendant but which is not held out as a business office of the defendant shall not be deemed to be a business office of the defendant; or
(6) The defendant operated a motor vehicle or airplane in the foreign state and the proceedings involved a cause of action arising out of such operation.

(b) The courts of this state may recognize other bases of personal jurisdiction; provided, however, that if the proceedings in the foreign court involved a cause of action arising out of business activities in the foreign state, the judgment shall not be recognized unless there is a basis for personal jurisdiction as specified in subsection (a) of this Code section.

8

final, conclusive, and enforceable where rendered . . . ." O.C.G.A. § 9-12-112 (2006). Second, with regard to Code Sections 9-12-114 and 9-12-115, the only question of law brought to the Court for its review concerns O.C.G.A. § 9-12-114(10). Code Section 9-12-114(10) provides that a foreign judgment shall not be recognized if "[t]he party seeking to enforce the judgment fails to demonstrate that judgments of courts of the United States and of states thereof of the same type and based on substantially similar jurisdictional grounds are recognized and enforced in the courts of the foreign state." Via the affidavit of Solicitor Hadley,[4] plaintiff asserts that a judgment from the United States of the same type and based on substantially similar jurisdictional grounds as the judgment plaintiff seeks to enforce by this action are recognized and enforced in the courts of the United Kingdom.

According to Solicitor Hadley, Dicey & Morris' The Conflict of Laws is a recognized authority on the subject of the enforcement and recognition of foreign judgments under English Law. (Hadley Aff. at ¶ 11.) Solicitor Hadley attaches to his affidavit copies of the

---

[4] According to his affidavit, Robert Vincent Hadley is a solicitor of the Supreme Court of England and Wales and a partner in the firm of solicitors, Kirkpatrick & Lockhart Nicholson Graham LLP of 110 Cannon Street, London. Solicitor Hadley holds a current practicing certificate entitling him to practice law as a solicitor in England and Wales. (Aff. of Robert Vincent Hadley ("Hadley Aff.") [15] at ¶ 3.)

relevant excerpts of Dicey & Morris. As Solicitor Hadley explains it, because there are no English statutes dealing with recognition and enforcement of foreign judgments, such judgments are only enforceable in England in accordance with English common law rules. (*Id.* at ¶ 12.) These rules provide for enforcement of a foreign judgment that is: (1) for a definite sum (2) final and (3) conclusive. (*Id.* at ¶ 14.) Solicitor Hadley then explains why none of the recognized exceptions to enforceability apply to a judgment from the United States of the same type and based on substantially similar jurisdictional grounds as the judgment plaintiff seeks to enforce by this action. (*See id.* at ¶¶ 18-29.) Thus, Solicitor Hadley concludes that "a judgment of a court of the United States of America, of the same type and based on substantially similar jurisdictional grounds to the Judgement, would be recognized and enforced in the courts of England and Wales." (*Id.* at ¶ 30.)

In response to all of this, defendant does not argue that plaintiff has erred in its conclusion that judgments of the courts of the United States of the same type and based upon substantially similar jurisdictional grounds as the judgment that is sought to be enforced are recognized and enforced in the United Kingdom. Defendant's only response to plaintiff's motion for summary judgment is that Solicitor Hadley's affidavit is inadmissible because it was not attested to by a person duly authorized by law to administer an

10

oath for the purposes of providing an affidavit in a federal court in the United States. (Resp. to Summ. J. at 6.)

Solicitor Hadley's affidavit opens with the words "I, Robert Vincent Hadley, Solicitor of the Supreme Court of England and Wales of 110 Cannon Street, London, EC4N 6AR, <u>MAKE OATH AND SAY</u> as follows." (Hadley Aff. at 1)(emphasis added). The last page of Solicitor Hadley's affidavit contains the stamp and signature of "Stafford Young Jones . . . A commissioner for Oaths/Solicitor." (*Id.* at 15.) According to Sweet & Maxwell's *United Kingdom Law in Force: Civil Procedure Rules* available on Westlaw and cited by plaintiff, "[a]n affidavit must comply with the requirements set out in the relevant practice direction." U.K. Civil Procedure Rules 1998/3132 Pt. 31 r 32.16. The White Book from Sweet and Maxwell contains Practice Directions and Practice Statements which provide that affidavits in the courts of England and Wales must be signed by the deponent and "completed and signed by the person before whom the affidavit was sworn whose name and qualification must be printed beneath his signature." Part 32 Practice Direction 5.2 (UK CP 32PD.1). Pursuant to Practice Direction 9.1 only those listed may administer oaths and take affidavits, but "Commissioners for Oaths" are among those listed. Part 32 Practice Direction 9.1 (UK CP 32PD.1). In other words, under the laws of the United Kingdom, Solicitor Hadley's affidavit appears by all accounts to be a valid

11

affidavit made under oath before an officer duly authorized to administer oaths in that country.

"An 'oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said... The question whether a statement is made under oath or affirmation turns on whether the declarant expressed the fact that he or she is impressed with the solemnity and importance of his or her words and of the promise to be truthful, in moral, religious, or legal terms." *U.S. v. Bueno-Vargas*, 383 F.3d 1104, 1110 (9th Cir. 2004)(internal citations and quotations omitted). Solicitor Hadley's affidavit is replete with clear indications in both its beginning ("make oath and say") and ending ("sworn by Robert Vincent Hadley") that Solicitor Hadley understood the solemnity and importance of his words and obligation to tell the truth. (*See* Hadley Aff. at 1, 15.) Moreover, Solicitor Hadley's affidavit qualifies as such under the laws of the United Kingdom. Given all this, viewing all evidence in the light most favorable to defendant, as the Court must do on plaintiff's motion for summary judgment, the Court finds no reason not to treat Solicitor Hadley's statement as what it purports to be: a fully attested to affidavit.

### III. Form of Judgment

On January 13, 2004, the conversion rate for converting British pounds to U.S. dollars was £1 equals $1.8432. (SMF at ¶ 3.) On May

AO 72A
(Rev.8/82)

7, 2004, the conversion rate was £1 equals $1.7842. (*Id.*) On November 1, 2005, the conversion rate was £1 equals $1.7630. (Foreign Exchange Rates (weekly): Historical Rates for United Kingdom, available at http://www.federalreserve.gov/releases/h10/Hist/dat00_uk.htm, last accessed April 6, 2006.) By the terms of the original judgment, interest accrues on all sums payable at the rate of 8% per annum. (SMF at ¶ 3.)

On January 13, 2004, plaintiff was awarded a total of £430,071.47. On May 7, 2004, plaintiff was awarded a total of £9,734.50. On November 1, 2005, plaintiff was awarded a total of £3,583.00. Thus, after conversion but before interest, from the January 2004 judgment, plaintiff is entitled to $673,328.04[5] in damages, $86,202.10 in pre-judgment interest, and $33,177.60 in costs. After conversion, but before interest, from the May 2004 judgment, plaintiff is entitled to $5,352.60 in costs and $12,015.69 in additional costs respecting the appeal. From the November 2005 judgment, after conversion but before interest, plaintiff is entitled to $6,316.83 in additional costs respecting the second appeal. After adding interest on all sums payable at the rate of 8% per annum: $673,328.04 increases to an award of **$805,638.63**; $86,202.10

---

[5] The Court has made its best effort at converting these currencies. In the event that it has erred, it is certain that one or both parties will seek a correction.

increases to an award of **$103,141.02**; $33,177.60 increases to an award of **$39,697.08**; $5,352.60 increases to an award of **$6,236.42**; $12,015.69 increases to an award of **$13,999.73**; and $6,316.83 increases to an award of **$6,530.22**. Thus, in total, pursuant to the Georgia Foreign Money Judgment Act, O.C.G.A. § 9-12-113, defendant is hereby ordered to pay plaintiff the sum of **$975,243.10**.[6]

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's Motion for Summary Judgment [13]. The Court hereby directs the Clerk to **issue a judgment** conforming to the language of the calculations contained in the above section.

SO ORDERED, this 28 day of April, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

---

[6] For the specific calculations supporting this award, please see the attached spreadsheet.